Our fourth case this morning is Tucker v. United States. Ms. Gelfman, whenever you're ready. Good morning, Your Honors. May it please the Court. I'd like to make three points this morning. First, when Mr. Tucker's sentencing counsel failed to object to the application of Sentencing Guideline 2D1.182, despite the plain language of the guidelines and the uniform body of case law interpreting the phrase Offense of Conviction Establishes, Mr. Tucker's counsel afforded him constitutionally ineffective assistance. Second, Mr. Tucker's counsel and the government's counsel made no agreement about 2D1.182. And third, the claim that is now on appeal was timely asserted by Mr. Tucker. So I'd like to begin where Mr. Tucker's counsel should have begun, which is with 2D1.182. 2D1.182 applies where the Offense of Conviction Establishes Causation of Death, which simply means Offense of Conviction generally implies a conviction. But if you weren't sure, he could have checked because the guidelines actually define the phrase for him in 1B1.2, where the guideline says Offense of Conviction means offense conduct charged in the indictment of which the defendant was convicted. But Mr. Tucker was not convicted of causing a death. Well, that was by stipulation of the parties to withhold that issue from the jury so as to avoid prejudice. Why isn't that just a reasonable strategic judgment on the part of defense counsel? So, Your Honor, the stipulation of the parties was about 841B. It was not about 2D1. Well, it's the same issue. They stipulated to keep the issue of causing death from the jury to avoid tainting the jury. Your Honor, I respectfully disagree. If you go and you look at the transcript where the government is describing to the district court what the parties have decided, the government talks about the causing death aspect, and he says it's included in the indictment. That, of course, is referring to 841B because the sentencing guidelines are not in the indictment. He talks about the mandatory minimum. That, of course, is talking about 841B. But you're arguing the legal consequences. I'm talking about the factual issue that the jury did not decide because it was not submitted to the jury by stipulation of the parties. Whether that has legal consequences under the statute or the guidelines is sort of beside the point. It was a strategic stipulation to keep that fact from the jury, make sure the jury was not deciding it because it would taint the jurors, and let the judge decide it. I think that the stipulation, though, was about the factual issue with respect to 841B. It isn't the case that any stipulation about that factual issue with respect to 841B automatically implies that the sentencing guideline is going to be interpreted differently than its plain languages. And we know that from Lawler where there actually was the same thing, an agreement that we're going to deal with this at sentencing. But that didn't change the meaning of offensive conviction. That was a guilty plea case. Yes, yes. But in the guilty plea, there was actually an agreement that the parties, that the government was going to say that the mandatory minimum applied and that 2D1.1 applied, and Ms. Lawler was going to say the opposite. And similarly, in Redmond, the parties actually agreed that they were going to deal, that for the mandatory minimum purposes, the judge could make that judgment, but there was no deal about 2D1.182. There's no implied deal about 2D1.182. And I think it's easy to think about this when we think about the fact that the deal about 2D1.182 would have had to be a stipulation of law because this wasn't a stipulation of fact. No one was agreeing that there was causation of death. It would have to be a stipulation of law that whatever was found by the judge would be considered to be part of the offense of conviction. And if you look at the text of the transcript, what the government's lawyer said to the district court was actually the exact opposite of that. He said it was not an element. Yes, he said it's not an element. It's not a part of the offense of conviction. He said it's a sentencing factor. He wasn't talking about 2D1.182, and this isn't the case where Mr. Tucker's counsel was presenting it to the court and trying to be shady with his language. This was the government's discussion of what the agreement was. Counsel, let me ask you a question about something that's bothering me. I'm sympathetic to your argument, but in Pressler, which is the Third Circuit decision on the Lawler point, so the court has a footnote saying that failure to press the point wasn't a plain error, and in thinking about whether it's deficient performance, I mean it depends on how obvious it is, right? And if the Third Circuit says the failure to make this point I'm sorry, is this Greeno? Is this the Fifth Circuit? No, this is the Third Circuit. This is Pressler. The failure to make this offense of conviction point in the district court forfeited it, and it wasn't a plain error, so the Third Circuit said it was forfeited. Then it makes it harder to say, you know, in thinking about it that way, well, gosh, if it wasn't a plain error, yet it should have been so obvious to him that it was deficient performance for him not to press the point. So I think that what that gets to is plain error isn't just about obviousness. In most circuits it also requires that the case law that warns you that this is an issue is from within the circuit, whereas that isn't the rule in the ineffective assistance of counsel context where he was, in fact, counsel was required to learn the law, and that didn't mean he could just restrict his case law search to what the Seventh Circuit said. He was required to learn in general what the case law said. But surely if you misinterpret the plain text of a statute that's glaringly obvious and there's no case law in it because it's so obvious it just hasn't come up, it could be a plain error, right?  Again, I would disagree with the Third Circuit because I do think that the actual text of the guideline here is plain enough, but you don't need to get there because there's all this case law as well. So even if the text of the guideline wasn't plain enough to get you to plain error, once you add in the authority from the Third, Fifth, and Sixth Circuits and from the three district court decisions that had addressed it, you still get to ineffective assistance of counsel because they're just different standards. So what Mr. Tucker's counsel should have done is look at the guidelines, look at the definition that was within the guidelines, and then look at the Third, Fifth, and Sixth Circuits, and the fact that he didn't do so really prejudiced Mr. Tucker. And so counsel should have asked the court to not apply that section of the guidelines, having stipulated to keep the issue from the jury in the first place. Well, again, I think issue is a broad statement, and that wasn't what the stipulation was. The stipulation was the causing death aspect of the investigation. It's included in the indictment. Again, that's talking about H41B. The mandatory minimum of 20 years is still in play, and the government believes it's even more of a sentencing factor than an element of the offense. And the government and defense believe it might be somewhat prejudicial to Mr. Tucker. That's talking about the 20-year mandatory minimum. It's not talking about 2D1.1 or 2. Those are the legal consequences. I'm talking about the issue, saying we take it off the table as far as what's going to be submitted to the jury so that the offense of conviction is no longer a resulting in death offense. Right? And so then he wants to argue that I get the benefit of both of these rulings. I get it withheld from the jury,  I disagree with the description of what was happening in the agreement, which was we agree that this fact, for all purposes, we are not going to object. If you find the fact that any results that you want, those will occur. Instead, what the actual agreement was, which is in the transcript, is we agree that this fact can be found with it for the purposes of H41B. They would have had to actually make a stipulation about what the meaning of the guideline was in order to stipulate about 2D1.1A2. It would have been a stipulation of law, which in general is pretty disfavored. Courts disregard them all the time and have the right to do so. If that had occurred here, I think what might help is this court has said that we address stipulations in the same way that we address contracts. And if we look at the stipulation here and we say, was there any mention of 2D1.1A2, would you construe this as a contract to be an agreement that 2D1.1A2 would be interpreted such that an offensive conviction includes something of which the party was not convicted? No, there just isn't any mention of 2D1.1A2 at all. I'm actually thinking about it in terms of the district judge. If the district judge had been presented with this argument at sentencing, as you're arguing the judge should have been presented, defense counsel had a duty under Strickland and the Sixth Amendment to raise this issue. And my reaction as a presiding judge was that you gave this away. You can't have your cake and eat it too. That would be my reaction. You took this off the table for purposes of what the charge was, and it's too late to argue the point now. So first, Your Honor, I don't think that's how the district court judge understood it because after the government spoke, the district court actually responded and said, so what you're asking me to do is to take this out of the indictment. The district court didn't then say, and also for the purposes of sentencing, I'm going to construe offensive conviction. No, I'm talking after the fact. Not what people understood. Obviously it was presented to the court before trial as an 841 issue. Yes. But the issue was resulting in death. Keep it from the jury at all costs. Don't let the jury decide it. I think, Your Honor, I disagree. That's what he wanted. For the purposes of 841, but there isn't any agreement about 2D1.182, and I don't think that the district court judge would have held it against him. In Redmond, that's not what happened. The court said, you have an agreement about 841B, but that doesn't mean that we've interpreted 2D1.182 differently. And this court said the same thing in Lawlor, where there was also an agreement to deal with it at sentencing. And this court still – I'm sorry, Your Honor, I'm out of time – but this court still said in that contest, no, you can still make the textual argument about 2D1.182 and prevail on it. Thank you. Mr. Tableson. Good morning. May it please the court, my name is Benjamin Tableson, and I represent the United States. I.B. Tucker's trial counsel made a reasonable strategic decision to prevent the jury from dwelling on whether his client had caused the death. Once he had done so, and because that was reasonable, there was no unringing that bell. He could not very well then have gone to the sentencing judge at sentencing and said, yes, judge, I know that I asked you to make this determination, I asked you to take this away from the jury, but you can't. There's no principled distinction with respect to this request between making the request for Section 2D1.182 and Section 841. And that is true because for purposes of our analysis under Strickland, the question is just whether Mr. Tucker's counsel behaved reasonably. If it's right that the agreement was only for Section 841 purposes and what Mr. Tucker wanted was for the jury to make the determination with respect to death for purposes of his guidelines, he would have received no benefit whatsoever from his bargain with respect to Section 841. If the jury had been asked to make that determination, you can't reach some sort of telemonic compromise here where it's taken from them for sentencing purposes but not for the statute. Incidentally, it appears that Mr. Tucker acknowledges he has no quibble with his mandatory minimum being based on the judge's finding, which means that the bottom of his guidelines range would go from 210 months to 240 months, the 20-year mandatory minimum. But as I said, and as Your Honor indicated with your questions, there's no picking and choosing here. Once he'd asked the court, once he'd invited the court to make this determination himself instead of leaving it to the jury, if there was any error, it was invited error, tantamount to submitting an infirm verdict form or a jury instruction to a court and then later complaining that there was an infirmity with the verdict form or the jury instruction. That kind of claim can't work in this court or any court. Tucker's claim is further untimely. There is no claim in his original timely petition based on the same facts or occurrence upon which his current claim is based. There's no mention of Section 2D 1.182, no mention of death resulting. He does make reference to ineffective assistance at the sentencing phase. The courts have been clear that neither trial nor sentencing is a single occurrence for purposes of relation-backed doctrine. And it can't be right that he is incorporating by reference every claim he made and every one of his 25 or so pro se motions at trial. Motions, by the way, he filed pro se while represented. So not only is he not entitled, as he did with his original Section 2255 petition, not only is he not entitled to a liberal construction of those motions, he was not even entitled to have them considered because he had a lawyer. And both the magistrate judge and the trial judge admonished him to stop filing motions because they would not consider them. Judge Edelman went ahead and decided this issue. Was that just an act of grace? I'm sorry. He consolidated the... He addressed the Lawler issue and denied relief on that ground. Yes, Your Honor. I think essentially that was an act of grace. He said, well, I think because Judge Edelman understood Lawler not to apply, it was fairly easy for him to say, well, Lawler doesn't help you, and so I've considered your motion to expand the record. He didn't consider it as a motion to amend. Your motion to expand the record is granted in part in so much as I've considered Lawler, but denied his move otherwise. I don't think that affects our analysis here. As to the merits with respect to Strickland deficiency, this Court has never held that it's constitutionally infirm not to cite out-of-circuit cases, but it has done something approaching the opposite, which is say it is not ineffective to fail to predict changes or advances in the law, and Lawler was at a minimum an advance in the law, and I think we know that because if there were cases on the road to Lawler here, the Lawler Court presumably would have cited them. Instead, the Lawler Court did a reasonable thing, which was cite out-of-circuit cases, including Pressler and Greenough, which say there was divided authority on this issue, and so, as Your Honor indicated, it was not plain error to impose an enhancement based on a judicial finding. But okay, so the Lawler Court cites out-of-circuit cases, and it's the first time this Court ever has cited those cases. In fact, it's the first time, to my knowledge, if Westlaw can be trusted, anyone has. No litigant in any case before this Court had ever cited any of those cases before this Court. So if it's ineffective assistance not to do that, that's pretty surprising. Defendants are sentenced, were sentenced, pursuant to death-resulting findings by judges all the time, and they brought ineffective assistance claims all the time. Surely someone would have cited one of those cases if there were ineffective assistance not to. Finally, as to prejudice, this Court was clear at Lawler that, quote, And we know that because he said so. He said, when adopting the government's 40-year sentencing recommendation, that he was basing the sentence on the death as a 3553A factor and would have done so even if he hadn't been required by stipulation of the parties to make that formal finding. He also said that Tucker's criminal history score, when considering the history and characteristics of the defendant, profoundly understated the pathology of the defendant's criminal history, and so he said Tucker deserved, effectively, a life sentence, which is what he imposed. For all those reasons, in the government's view, Tucker's sentence should not be disturbed. If there are no questions? Apparently not. Thank you. Thank you very much. Ms. Gelfman, I don't know how much time you had left. Maybe none. I'll give you a minute if you have something else to say. I just want to clear up that the incorporation by reference of 537 of the docket 537, which was in his original petition, was not a general incorporation of everything in the record and every motion he'd ever written. It was an incorporation of one specific motion that talked about the ways in which his sentencing counsel was ineffective. And I also want to point out that the statement that the government would not get a benefit of the bargain about an agreement about 841B is false because the government otherwise would have to prove for the mandatory minimum, and the government shifted that to sentencing. Any questions? All right. Thank you. Thank you. Our thanks to both counsel. The case is taken under the law. You were appointed, weren't you? Yes. The court wants to thank you. Yes. Thank you, Judge Bauer, for doing my job. We thank you for your service.